UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| KAVARA GEE, ) <br> ) <br> Plaintiff, ) <br> ) <br> -vs- ) <br> ) <br> ) <br> DARLINGTON COUNTY SCHOOL ) <br> DISTRICT, ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No.: 4:13-cv-0928-BHH-TER <br><br><br><br> **REPORT AND RECOMMENDATION** |

**I.   INTRODUCTION**

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq., alleging Defendant discriminated against him because of his sex. He also asserts a state law claim for breach of contract. Presently before the court is Defendant's Motion for Summary Judgment (Document # 31). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. This report and recommendation is entered for review by the district judge.

**II.   FACTS**

Plaintiff, a black male, currently works as a behavior manager, or shadow, for a disabled high school student at Hartsville High School. Pl. Dep. pp. 26-28. He has held this position since September 2010. Pl. Dep. p. 26. Plaintiff holds a Bachelor of Arts degree in Criminal Justice from Morris College and, at the time he applied for employment, had completed courses towards a Masters degree in Religious Education from Liberty University. Pl. Employment Application (Ex. 11 to Pl. Dep.). He has worked as a grill chef, a senior pastor, a police officer, a loss prevention agent at a retail location, a temp worker at a factory, and a counselor at the Billie Hardee Boys Home. Pl. Employment Application. He has worked with children through the Pee Dee Baptist

Brotherhood. Pl. Dep. p. 47.

Plaintiff has applied for many positions within the Darlington County School District since at least May of 2011,[1] but has not received any of the positions for which he applied. Plaintiff alleges, with respect to the positions for which he applied at Southside Early Childhood Center (Southside), that the school's principal, Patricia Toney, discriminated against him because of his sex. Comp. ¶¶ 27-39. Plaintiff applied for five teacher assistant positions at Southside and interviewed for three of the positions. Toney Dep. p. 35. Pursuant to the school district's policies, for non-certified staff such as teacher assistants, the school principal conducts interviews and makes a hiring recommendation to the Director of Personnel, who ensures that all required paperwork has been completed and then forwards the principal's recommendation to the Superintendent of the district, who makes the ultimate hiring decision. Knight Dep. pp. 12, 15-16.

Plaintiff first applied and was interviewed twice for a 4K teacher assistant position in January of 2012. Pl. Dep. p. 46. The panel of interviewers were all female. Interview Teams Chart (Ex. 8 to Pl. Response). During the interview, Plaintiff mentioned that the only male presence at Southside was the janitor. Pl. Dep. 57. One of the interviewers mentioned that not many men interviewed for positions at the school or would want such positions. Pl. Dep. 57-58. Plaintiff found the interviews to be unproductive and unprofessional, and he felt as if the interviewers already had their minds made up. Pl. Dep. 58.

Jazmyne Byrd, a black female, was hired for the position. Toney Dep. p. 36. Byrd had a

---

[1] In May of 2011, Plaintiff applied for a teacher's aid position at Darlington High School. While Plaintiff was waiting for an interview, the principal, mistakenly escorted a white female, rather than Plaintiff, to his office for the interview. Upon realizing his mistake, the principal interviewed Plaintiff. Plaintiff was not hired and, thus, filed a charge of race discrimination with the EEOC. After learning that the position was filled by a black male, he did not pursue litigation of the issue. Pl. Dep. pp. 33-39; Knight Dep. pp. 21-22.

degree in speech from Georgia State University, had previously worked as a teacher for a short period of time, and had worked as an office assistant and substitute teacher at Southside. Byrd Application Packet (Ex. 12 to Toney Dep.); Toney Dep. p. 42. Toney was familiar with Byrd's work ethic and ability to work with students. Toney Dep. p. 42.

Plaintiff next applied for another position as a teacher assistant in May of 2012. Teacher Assistant Positions Document (Ex. 8 to Pl. Response). Plaintiff was not interviewed for this position. Teacher Assistant Positions Document (Ex. 8 to Pl. Response). Tameka Ham, a black female, was hired. Toney Dep. p. 39; Def. Position Statement to EEOC (Ex. 1 to Def. Motion). At the time, she was working towards obtaining a certificate for medical billing and coding and was a flag instructor with one of the district's high school bands. Toney Dep. p. 45; Ham Application Packet (Ex. 15 to Toney Dep.). Ham had been terminated from a previous position as a nursing assistant for leaving a patient. Toney Dep. p. 46; Ham Application Packet. Toney hired Ham because she liked her personality and because she'd worked with students before as the flag instructor. Toney Dep. p. 46.

Plaintiff also applied for two teacher assistant positions in July of 2012 and interviewed for both in one interview. Toney Dep. p. 35-36. Toney hired Christine Fisher, a black female, for one of the positions. Toney Dep. 45-46. Fisher has a degree in social work from Morgan State University. Fisher Application Packet (Ex. 16 to Toney Dep.). She previously worked as a teacher assistant at Southside before moving away from Hartsville and had also worked as a teacher assistant at other schools as well. Toney Dep. pp. 19, Fisher Application Packet. Toney hired Jason Harris, a black male, for the other position. Toney Dep. pp. 31, 43, 47. Harris graduated from Newberry College with a degree in physical education. Harris Application Packet (Ex. 14 to Toney Dep.). In the past he had worked as an In School Suspension teacher and assistant football coach at West

Florence High School as well as a substitute teacher and a teacher assistant in an elementary school and a Head Start program. Toney Dep. pp. 31, 43; Harris Application Packet.

The final position for which Plaintiff applied at Southside was for a teacher assistant in an exceptional education classroom. Latresa Lizana, a black female, was hired for this position. Toney Dep. p. 42. Lizana had completed some college courses but did not have a degree. Lizana Application Packet (Ex. 13 to Toney Dep.). She previously worked at Southside as a Read Well teacher, but her contract was not renewed because she was not certified for the Read Well program. Lizana Application Packet. She was also a program instructor for the Boys and Girls Club in Mississippi prior to relocating as a result of hurricane Katrina. Lizana Application Packet. She had experience working with kindergarten children as a Sunday school and Awana teacher and had a child with special needs. Lizana Application Packet.

### III.   STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and

inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### IV.   DISCUSSION

#### A.   Title VII

Plaintiff alleges that Defendant failed to hire him because of his sex. Title VII makes it "an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1). Plaintiff has not produced direct evidence of sex discrimination and, thus, must proceed under the burden-shifting proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Under this burden-shifting scheme, Plaintiff has the initial burden of establishing a prima facie case of discrimination. Id. To establish a prima facie case of failure to hire, Plaintiff must show (1) he is a member of a protected class;[2] (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position in favor of someone outside the protected class or under circumstances giving rise to an inference of unlawful discrimination. Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir.2004); Brown v. McLean, 159 F.3d 898, 902 (4th Cir.1998).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the failure to hire. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reasons, but was pretext for discrimination. Reeves, 530 U.S. at 143. Throughout the burden shifting scheme set forth in McDonnell Douglas, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude Defendant intentionally discriminated against him.

---

[2] See Reed v. Md. Dep't of Human Resources, No. ELH–12–472, 2013 WL 489985, at *17 (D.Md. Feb. 7, 2013) ("'While Congress' particular focus in amending Title VII to prohibit discrimination on the basis of 'sex' was to ensure equal employment rights for women, the Supreme Court has interpreted the Act's broad language to protect both men and women.'" (quoting Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745, 749–50 (4th Cir.1996))).

It is undisputed that Plaintiff meets the first three prima facie elements. Defendant argues, however, that Plaintiff fails to show that he was rejected for the positions in favor of someone outside the protected class under circumstances giving rise to an inference of unlawful discrimination, especially with respect to the position filled by Jason Harris. In the Fourth Circuit, a Title VII plaintiff must ordinarily show replacement outside the protected class in order to establish the fourth prong of his prima facie case. Miles v. Dell, Inc., 429 F.3d 480, 486 (4th Cir.2005). "[R]eplacement within the protected class gives rise to an inference of non-discrimination with respect to the protected status. The fourth prong requires [a plaintiff], as part of [his or her] prima facie case, to eliminate this inference of non-discrimination." Id. at 488. However, in Brown, the Fourth Circuit recognized that possible exceptions exist, including the employer's hiring of another person within the protected class that was calculated to disguise its act of discrimination. Brown, 158 F.3d at 905–906.

Plaintiff argues that Defendant's hiring of Harris does not create an inference of non-discrimination because Harris was hired after Plaintiff filed his first charge of discrimination. The timing of this hire in relation to Plaintiff's first charge of discrimination is insufficient to negate the inference of non-discrimination with respect to the position filled by Harris for two reasons. First, Plaintiff's first charge of discrimination was based on race, not sex, and, second, it arose out of an interview with the principal of Darlington High School, not Southside. Plaintiff limits his allegations in this case to sex discrimination by Toney, the principal at Southside who interviewed the candidates and made the hiring recommendation to the Superintendent. He fails to present evidence to show that Toney was aware of Plaintiff's previous charge of discrimination, which involved neither her nor her school. This evidence is insufficient to show that Defendant hired Harris in an effort to disguise any discrimination. Accordingly, Plaintiff fails to create a prima facie

case of discrimination with respect to the position filled by Harris.

Defendant also argues that Plaintiff fails to present a prima facie case with respect to the other positions at issue because he has not presented sufficient evidence to show that the other positions were filled under circumstances giving rise to an inference of unlawful discrimination. However, each of the other positions was filled by someone outside Plaintiff's protected class, which is sufficient to meet Plaintiff's burden at the prima facie stage of the burden-shifting analysis. See Brown, 158 F.3d at 905–906; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (noting that the burden of establishing a prima facie case is not onerous). Therefore, with respect to the four teacher assistant positions at Southside filled by black females, Plaintiff has presented a prima facie case of sex discrimination.[3]

Accordingly, the burden shifts to Defendant to present a legitimate, non-discriminatory reason for hiring the four female teachers discussed above instead of Plaintiff. Burdine, 450 U.S. at 254. Once Defendant makes this showing, the burden returns to Plaintiff to present sufficient evidence to show that Defendant's reasons for hiring these individuals is pretext for a discriminatory reason. Reeves, 530 U.S. at 143.

The first position at issue is a 4k teacher assistant position that was filled by Jazmyne Byrd. Byrd had a college degree and had previously worked at Southside as an office assistant and substitute teacher. She had also previously worked as a teacher with young children at two different schools. Because of her previous employment at Southside, Toney was familiar with her work ethic and ability to work with children and, thus, decided to hire her for this position. Plaintiff argues that

---

[3] In addition, with respect to the first position for which Plaintiff interviewed and that was ultimately filled by Jazmyne Byrd, the teacher's question during Plaintiff's interview about why a man would want such a position is sufficient at the prima facie stage to give rise to an inference of unlawful discrimination.

Byrd's application packet failed to meet the criteria because she only had two reference checks and one of her references was Toney. However, Plaintiff fails to produce the application criteria for the position in question.[4] Nevertheless, the record shows that Byrd listed four professional references on her application, one of which was Toney. Byrd Application Packet. Plaintiff presents no evidence that Toney could not serve as a reference for an applicant. In addition, the reference checks are forms completed by the references listed on Byrd's application and returned directly to the school district. Byrd Application Packet. Although the applicant is responsible for providing the form to the reference, the reference, not the applicant, is responsible for sending the form back to the school district. Byrd Application Packet. Thus, there is no evidence that Byrd was responsible for ensuring those forms were completed and returned. Plaintiff also argues that Byrd worked only as an office assistant while at Southside previously and did not work in a classroom, but Toney testified in her deposition that Byrd worked as a substitute teacher, and Plaintiff fails to present evidence to create a dispute of fact with respect to this issue.

However, during the interview for this position, one of the female interviewers mentioned that not many men would want such a job. This statement alone is sufficient to create an issue of fact as to whether the reason given for hiring Byrd over Plaintiff was pretext for a discriminatory reason.

The next position at issue is the teacher assistant position for which Tameka Ham was hired. Ham did not have a college degree, but was working towards obtaining a certificate for medical billing and coding. She had not worked as a teacher, but was a flag instructor for one of the district's

---

[4] Plaintiff has produced the application requirements for professional staff hiring, but not for non-certified staff. See District Policies (Ex. 2 to Pl. Resp.) at bates number 000019. He also produced what appears to be the job posting for the Autism Assistant position. See Hursey Dep. Ex. 2 (Ex. 7 to Pl. Resp.). Defendant filed a copy of the job posting for the 4k teacher assistant position that closed on July 17, 2012. Hursey Dep. Ex. 6 (Ex. 5 to Def. Motion).

high school bands. Toney testified that she hired Ham because she liked her personality and because she worked with students as a flag instructor. Plaintiff argues that Ham was not qualified for the position because she did not have either (1) a minimum of sixty academic credit hours from an accredited institution of higher education or (2) an associate's degree or (3) a copy of a passing score on ParaPro Assessment or (4) a copy of passing scores on four areas of work keys assessment. See Teacher Assistant Job Posting, Hursey Dep. Ex. 6 (Ex. 5 to Def. Motion). These qualifications were listed on the job posting for this position, along with the statement "such alternatives to the above qualifications as the Board may find appropriate and acceptable." Teacher Assistant Job Posting. There is no evidence in the record that Ham met any of these qualifications or that she provided alternatives to the listed qualifications. In contrast, Plaintiff held a bachelor of arts degree from Morris College. Thus, based upon the qualifications listed in the job posting, Plaintiff was qualified for the position and Ham was not. When comparing the relative job qualifications of two candidates, if "the plaintiff has made a strong showing that his qualifications are demonstrably superior, he has provided sufficient evidence that the employer's explanation may be pretext for discrimination." Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 261-62 (4th Cir.2006). But where "a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." Id. at 261 (citing Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 649 & n. 4 (4th Cir.2002). Here, based upon the qualifications required for the position as set forth in the job posting, not only was Plaintiff more qualified for the position, but Ham was not qualified. As such, Plaintiff has presented sufficient evidence to create an issue of fact as to whether the reason given for hiring Ham over Plaintiff was pretext for a discriminatory reason.

Christine Fisher was the next applicant hired over Plaintiff for a teacher assistant position.

Fisher held a bachelor of arts degree in social work from Morgan State University and had worked as a teacher assistant at Southside and other schools as well. The last Southside position at issue in this action is a teacher assistant position in an exceptional education classroom. Latresa Lizana was hired for this position. She did not have a college degree but had completed some college courses. She previously worked at Southside as a Read Well teacher, but her contract was not renewed because she was not certified for the Read Well program. She was also a program instructor for the Boys and Girls Club in Mississippi prior to relocating as a result of hurricane Katrina. Although it appears that these two applicants were qualified for these positions, because the same decision-makers were involved with each Southside position, the hiring decisions made for these last two positions are tainted by the previous two decisions and the circumstances surrounding them. Thus, Plaintiff has presented sufficient evidence to create an issue of fact with respect to whether the reasons given for hiring the female applicants over Plaintiff were pretext for a discriminatory reason.

In sum, of the five positions for which Plaintiff applied at Southside, he presents sufficient evidence to create a dispute of fact as to the four positions filled by female applicants. Summary judgment is appropriate with respect to the position filled by Jason Harris.

      **B.**      **Breach of Contract**

Plaintiff also asserts a claim for breach of contract. As his basis for this claim, he argues that the school district failed to follow or enforce its own hiring procedures, including the equal employment opportunity policy. However, the South Carolina Supreme Court has held that "a general policy statement of nondiscrimination does not create an expectation that employment is guaranteed for any specific duration or that a particular process must be followed before an employee may be fired," and, thus, does not give rise to a breach of contract claim. Hessenthaler v. Tri-County Sister Help, Inc., 365 S.C. 101, 110, 616 S.E.2d 694, 699 (2005). Although Hessenthaler addresses at-will employment and whether policies in an employee handbook alter that relationship, the same principles

apply with greater force here where Plaintiff's claims arise not out of the termination of an employment relationship but from a failure to hire. With respect to the positions for which he applied at Southside, Plaintiff had no employment relationship nor is there any other evidence of an offer, acceptance and consideration, all of which are necessary to establish the existence of a contract. See Roberts v. Gaskins, 327 S.C. 478, 486 S.E.2d 771, 773 (1997). Therefore, Plaintiff's breach of contract claim fails.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 31) be granted as to Plaintiff's breach of contract claim and the Title VII claim arising out of the teacher assistant position filled by Jason Harris and denied as to the remainder of Plaintiff's Title VII claim.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

December 15, 2014
Florence, South Carolina